This is Andrew McBride of Wiley Ryan, Washington, D.C. from Ms. Martin. My colleague Brett Shoemate is with me at Council's table. Good morning, Your Honors, and may it please the Court. One of the central tenets of our legal system is fair notice, the idea that under the Due Process Clause of the Fifth Amendment and fundamental fairness, every defendant is entitled to know in advance what conduct is considered legal and illegal. That rule was violated here in a very, very shocking way, in my opinion. Two government agents were allowed to take the stand and testify as to what the law is and what the law means. They interpreted the CFR, and unfortunately for my client and for the United States, they got it wrong. They created two legal obligations, two legal duties that do not exist at law. One, they said that any kind of asset transfer in order to take advantage of a clear exception to asset calculation, the equity in your own home rule, was illegal. And I'll hold up, this is at FER 12, there's a series of demonstratives during this testimony that was shown to the jury that indicated that the so-called land swap was illegal. Well, in fact, as I think, and I would ask the court to ask my opponent if the land swap was in fact illegal because it wasn't. But counsel, when I read your brief, it seemed to me that the implied premise was that if she had a net worth below $750,000, that she was good to go. But in fact, the government was free to consider more than that when deciding whether she was eligible for this disadvantaged business program, right? Well, they were able to consider more than that, Your Honor. But I guess, you know, this land swap was legal and it was so central to the government's case. See, I believe it's not just a trial error. It's a structural error because Elaine Martin, if I could, Your Honor, she sought legal counsel about this very issue before she did the land swap. In other words, because she, if the testimony of Robinson and Watkins had been embodied in guidance from the agency, my client might never have engaged in the land swap. Well, let's say that you're right about the exception because let's say her home was excluded. That's my understanding of your brief. But I think you've conceded it's not just a $750,000 number. So what the SBA experts testified to was more than that. They testified about whether, why the backdated land swap, and I think it's uncontested that it was backdated, was material. Well, it actually was contested, Your Honor, because under the real estate law, Elaine Martin contended that there was an exchange of deeds and that is the date of the transaction, even though it was recorded later. So it was contested. But my point is that this, there were two duties that were created that did not exist at law. You mean created, forgive me for interrupting, but you mean created by the government's experts? Correct. Okay. Correct. And argued extensively to the jury. One was that the so-called land swap was illegal and it was not illegal because you're entitled to say, well, I'm not taking advantage of this exclusion from equity because I don't own my house. But at the same time, you've conceded that the SBA was free to consider that when deciding whether or not she had manipulated the process. No, I don't think they were free to consider that, Your Honor. We haven't conceded that. They were not free to consider. In other words, the central point was that there was some sort of prohibition on adjusting your affairs to qualify. And there isn't. That was the sort of cooked up from the spirit of the program. But there's no CFR provision that says you can't do that. My hypothetical gives you that. My hypothetical gives you that there isn't any prohibition on moving assets around within the permissible exclusion, sir. But I think that implied premise of your brief seemed to be, as I read it initially, that there was this threshold, the $750,000 threshold. And in fact, that's not correct. Well, no, no. The threshold is $250,000 to start. And then in the DOT program, then it rises to $750,000. She had to re-qualify each year. But there's no dispute. Here's what I would say is that the government based this entire case that she would have been disqualified, that there was materiality on the assets. In terms of the income, they never tied any income in any particular year to putting her above the income requirement. So this was the central part of the case. And I think under this Court's precedent, there's a spillover effect here. And the Court has recognized that. Once you say that the land swap is illegal when it isn't, and once you say that she had a duty to report all transactions within two years when she didn't, that duty was specifically limited transactions among family members for less than actual value, then, you know, as Edward Bennett Williams used to say to juries, at that point, you're looking through a dirty window. You're looking at my client through a dirty window. And that's unfair. And that's my point here. And no instruction can cure the fact that in 01 and 02, Ms. Martin didn't have notice that these things would be criminal because they arose from the testimony of the experts about the spirit of the program. Well, you know, as Justice Scalia has written many times, you know, we don't recognize common law crimes that arise from the spirit of a statute or a regulation. Is your response to my question that, is your response to my question or is your theory of the case that these, the steps she took to move assets may have disqualified her from the program, but it wasn't criminal conduct? Well, no, I, my theory of the case is it did qualify her for the program and it wasn't criminal conduct. Did not disqualify her. It did. No, it did not disqualify her. They couldn't disqualify her for taking advantage of a known exception. For instance, Your Honor, let me... Wait, wait, wait, wait. So, so just to be clear, your position is that they couldn't have disqualified her if they thought she backdated a transfer of her residence? Well, yes, they couldn't have disqualified her immediately for any of that because once she's under the asset threshold and the income threshold, she's presumptively economically disadvantaged and they would have to hold some kind of proceeding to say that she wasn't. And that's my point is that, you know, materiality here rests on the proposition that at least there was some natural tendency to change the result. And there, there is nothing with the land swap or any failure to report within two years. You can't just say, well, we would have inquired more. You could say that in every case of, of any kind. I mean, if I got my birthday wrong on the form, it would technically be false, but would... That's their position. That's why their position is that they were entitled to introduce expert testimony regarding materiality. Yeah, but they went far beyond materiality, Your Honor. I might, if I could, I could say, your time is ticking. So could I ask you, if I agree with you about the 404B error, you call it a 404B error, then what happened? I think you have to vacate the, uh, the conviction entirely, both convictions. That's my question. Yes, because it's, yes, because it's central to intent. And I think Your Honor has hit upon something very important. I, I've never seen the government try and use 404B, and I was a prosecutor for 10 years. I've never seen the government try and use 404B where there's a civil settlement agreement that says this shall not be used against anyone, that there's no liability. And I have that. I'd like to point out the site, um, to the court, uh, in the, in the, uh, it's at, uh, ER 468. Now this is conduct that occurred 16 years ago. And let me read, if I could, the settlement agreement. Counsel, before you do that, can you give me a realistic sense of something? I'm trying to put myself in the place of this trial, but it was 28 days or something like that. 27 days. There were 60 witnesses. There were hundreds of exhibits. Certainly it didn't take 28 days and 60 exhibits to deal with the discrete issue that you're talking about, whether there was backdating, whether or not that land swap was unlawful or not. So there was a lot that was happening. Give me a feel for that. There was a lot of other evidence of fraud. Your Honor, I think, I think the key here is that land swap was so central and we cited the number of times it was stated in opening, in the close, and the rebuttal. What else happened during the other 28 days? Well, see, once they established that there was a duty to report the land swap, uh, they also had the tax counts and obstruction, which they also tried. So that, but you know, Your Honor, honestly looking, stepping back from this as, as you asked previous counsel to do, what's really going on here? What's really going on here is that some prosecutors, in my view, lost sight of what Robert Jackson said about what it means to be a prosecutor. And there was a win-at-all-cost attitude here. And I think it goes to the 404B as well. And I would like to read what the civil settlement on this 404B conduct said, because I think it's important. It said as follows. This is on ER 468, paragraph five of the settlement that my client signed 16 years ago about this very 404B. This agreement is for the purpose of compromise and settlement only, and shall not be interpreted by either party, either any administrative agency or court, as a concession or waiver by either party of any claim or defense which may be asserted by either party in any future disputes regarding the income tax liability of petitioner. So in other words, the government took a civil, this is United States v. Bailey, your decision to a T. The government took a civil settlement where no liability was admitted 16 years distant in time. 16 years distant in time. Totally different issue about deductions for a Schedule F on a farm. And the prosecutor argued in her closing argument, she did this before. This is the same thing. She misstated the evidence. And she also said that my client in this document admitted she was wrong. So there are two statements from that prosecutor in the close that go, that go directly to propensity, Your Honor. They're not talking about knowledge here. And so what if it's blatant propensity? What if I agree with you that it's blatant propensity? Why does it mean that these convictions have to be reversed? Blatant propensity is under any standard plain error that is not harmless. And this evidence went to intent on both the fraud and the, the tax counts. What it said is my client is a bad person. She's a cheater. And that was the central issue in the case was her mental state vis-a-vis the filing. Yes, Your Honor, I'm sorry. What is the strongest argument, if I give you that point, that as Judge Block said, if there's 28 days, it's a pretty long trial. Lots and lots of evidence. What's your strongest case that this necessarily means, even if I agree with you that it's blatant, that it necessarily means that these convictions need to be reversed? Lazarenko. United States v. Lazarenko. This court recognized the spillover doctrine, and it's been applied in other cases. And the idea is that where, although I think the government would say this goes to the tax counts and only the tax counts should be vacated, where you put in prior conduct for propensity, I think it goes to any criminal charge that follows. So you think there's no way to take this out? There's no way to parse a sort of Sartrean statement that this is a bad person. He smoked at his mother's funeral in The Stranger. There's no way to parse that out. By the way, I think it might have been Justice Holmes who said there has to be a remedy for every wrong, and I would cite that here. It was Holmes, huh? Oh, I think it was Holmes, yeah. But anyway, as a trial judge, Your Honor, you know that there are certain issues that dominate a trial. And here, the land swap and the 404B were dominant. And if you, I would ask you to read, please, the opening close and the rebuttal close by the prosecutor. These were central. But there was this backdating. All this effort was made to really sort of juggle information on the opening candidate. And that might have led to further inquiry. And as I say, you know, my position is that there wasn't backdating, that there was a swap of deeds previously. The jury may have found otherwise. But my point is that there wasn't any, you know, this isn't a case of overwhelming evidence. This is a case of circumstantial evidence, and then it's about mental state. And when you have propensity evidence thrown in there, that really messes up the whole punch. You really can't... Let me ask you a question, if I may, please. I'm sorry for interrupting, but you've only got a few minutes left, and I'm sure you're going to want to read the rebuttal. We'll give you a little extra time if you respond to this. But let's assume we agree with you on one of those theories. Either the expert testimony was wrong, or the 404B state tax audit testimony was wrong, and we conclude it was prejudicial. Then your client gets a new trial. Correct, Your Honor. So then we really would not technically need to reach the issue that you raised about the amount of damages in sentencing. Correct, Your Honor. The question I have, though, is if your client is retried and convicted on a retrial, then that issue would be front and center again. That's correct, Your Honor. So would you want our court, assuming we gave relief on, and we're sending it back for retrial, would you want us to comment on that issue? As long as you followed Snyder. Yes, I think it actually would be appropriate. I'm not going to tell you how we would rule it. Yes, no, I understand, Your Honor. No, there's no answer. No, I think it would be appropriate, and it would help the parties in the context of any discussions surrounding retrial to know where they stand. And on that point, if I could, I guess what I would say is I think it's a fanciful argument by the United States that food stamps are the same thing as a government contract for a stealth bomber. The list of things in the benefits rule are all entitlements. You simply say, I have the following status and I qualify. That's not true of a government contract. This falls under the procurement rule. And then the other rule they cite is even more foreign. It's the regulatory approval rule. Well, that's fraud when I say these drugs are FDA approved and they aren't. That's not this case. But that's what the Seventh Circuit did under very similar circumstances. Well, you know, I think what's happened is that the previous version of the guideline, which Brothers and a number of the other cases started out with, in 2001, that benefits guideline was changed to add what I would argue is a very clear focus on entitlements only. And so this case law started to develop in 98, 99, 2000, and it's just been followed all along. But I would ask this court to analyze the issue de novo and to say flat out. Because otherwise the benefits rule completely eats every- And say flat out what? Say flat out that the procurement rule applies here, that where there's an allegation that a contract was unlawfully obtained, but was nonetheless fully performed. The argument is that if the procurement rule applies, then the costs are only the administrative costs, and there were none here. And I think what the government is really arguing, I think the loss here is non-pecuniary. I think the loss here is non-economic. And the government could have come in and said, well, the pecuniary loss is zero, but we want an upward enhancement for non-economic loss. For the defendant's gain, perhaps. Well, I think the gain rule probably doesn't apply here. Everyone agreed. And that's where I think the United States gets a little off the rails. I was at the sentencing, and Judge Windmill clearly said, look, I've got two choices here, zero or the full 20.5 million. That's it. I have two choices. The gain rule never came up, and the United States, in fact, said the gain rule was inapplicable. But should it come up? No, I don't think it should come up. What should come up is zero loss and a non-economic argument that our program was undermined, which they could have sought enhancement for, but they didn't. But that's not pecuniary loss. It could be the basis for an upward variance. That's correct. That's correct. But it doesn't, you know. That really wasn't contemplated by the guidelines, and therefore. That's correct, Your Honor. That's absolutely correct. It would be a factor not contemplated by the pecuniary laws, but it's not pecuniary loss. Thank you, Mr. McBride. Let me suggest this. You're over your time, but I'm going to give you three minutes additional for rebuttal, but we should conclude this portion now unless one of my colleagues has another immediate question. Thank you, Your Honor. Good. All right. Now we've got Mr. Robbins. Is that right? Good morning, Your Honor. May it please the Court? I'm Alex Robbins on behalf of the United States. I'd like to clarify one thing at the outset, if I may. My colleague quoted from the settlement agreement on the 404B issue just now, as he did in his brief, but he stopped the quote mid-sentence, I think in a way that, in fairness, I should read the rest of the sentence. The settlement agreement on page ER 468 says, this agreement is for the purpose of compromise and settlement only. I'm going to ellipse out the middle of the sentence. It shall not be asserted by either party in any future disputes regarding the income tax liability of the petitioners. That's where he stopped. The rest of the sentence is, for any period not expressly included within this agreement. The settlement agreement was limited in scope to the two tax years at issue. That's what the remainder of the sentence means. But, counsel, the government has a 404B problem here. Would you address it, please? Your Honor, I don't think this, as we argue in our brief on page 32, it's not a 404B issue at all. That's the first problem you've got, right? At trial, you took a different position. At trial, government counsel, the prosecutors at trial, put this issue in its 404B notice in quote, an abundance of caution. They put that, that's why it was, that's what they said in their pleadings. They also addressed it at sidebar with the judge as a 404B issue. Counsel at sidebar, when called to sidebar, counsel pointed out to the court that this wasn't the first time the issue had come up, that this, that state tax audit had been flagged in the government's 404B notice, which is true. Again, in an abundance of caution, the government put it in there in fairness to opposing counsel and to the court so that nothing would be a surprise. However, this evidence, the settlement agreement that a defendant signed, an email written by a defendant and interactions that a government official had with the defendant is, those are statements by a party opponent. That's not 404B evidence at all. In other words, there's no underlying act that needs to be approved in order to then prove one of the purposes under 404B1 as in an ordinary 404B case, for example, a drug smuggling case, the government might want to prove that someone was on a drug smuggling boat. What's the evidentiary value then? It's not 404B, so what's the evidentiary basis for it, for its omission? The evidentiary basis is that it's relevant evidence of defendant's intent and specific as the prosecutor. Ten years ago, $2,000 right off of personal expenses. What the prosecutor said in her closing argument, which is our position here, is that this evidence helped show that Elaine Martin knew what she was doing was wrong. That's at page 74 of the excerpt's record. And just to back up and to give the court context, perhaps, yes, Judge Goldberg. I think you might be swimming upstream a little bit on this issue. If we think there's a 404B problem, just hypothetically, what should we do? Should affirm on the grounds that any error was harmless. As this court pointed out in its questioning, this was a 27-day trial, and I think as even the defense counsel claims in his brief, that this was largely tangential, or I guess aside from the vast majority of the evidence in this case. So what else did they have? What else did the state have? The land swap? Your time is ticking, so try to get to the point so it'll help us. What else they had? In terms of willfulness evidence that came in after this was introduced. The fact that Elaine Martin kept what she called to her employees a slush fund. The fact that she kept a double set of books. The fact that she told her employees not to open correspondence involving the used material sales and let her handle that, handle all the correspondence. The fact that she deleted log entries of telephone calls involving used material sales. And the fact that all of the evidence in the case suggested that she was a sophisticated player, a businesswoman, who was involved in the minutia of her, of the day-to-day operations of her business, particularly with respect to the used material sales. And that goes, the reason that was relevant was among, besides the fact that the government has to prove beyond a reasonable doubt willfulness in a tax case, that she knew what she was doing was illegal or wrong, as the prosecutor said. In addition to that, the defense argument in its opening statement, if you look back at the transcript of the opening statement, the defense, I think the phrase was, defense counsel said that she was a farm girl and that she relied on trusted financial professionals who misled her and that that trust was misplaced. That was the defense opening statement. And so what the government was doing here was proving that, in fact, she was not an unsophisticated farm girl. She did not merely rely on her financial professionals. She was involved in every detail of these used material sales and understood her obligations under the tax laws. Why did it take 28 days to try this case? Because of the volume of, frankly, because of the overwhelming volume of evidence of defendant's fraud. And that goes, I think, to the harmless error argument as well. Even if this court were to determine, which it should not, but if it were to determine that the 404B issue should result in the reversal of the tax counts, although we would argue that this evidence was a drop in the bucket on the tax counts, then it certainly should not result in the reversal of the fraud counts because that would be, I guess, the bucket being dropped in a lake. The tax charges were only one of the ways in which defendant's applications to the SBA and to the State Department of Transportation Disadvantaged Business Programs were false and fraudulent. There was also the, in addition to the backdating of her land exchange, which appears to be uncontested, that, in fact, that item on the application was false. It didn't happen in 2001. It happened in, it was being contemplated in emails in May 2002. In their argument, they said that they're not contesting that it was backdated at the form, but that they take the position that the transaction actually occurred on the backdated date because it was an exchange of deeds or something like that. Yes, what my colleague alluded to up here just now is a different issue that was argued at some length below of when the deed on the property was recorded. It was recorded later in 2002. That's, I'm not suggesting now, I don't think it's relevant here, that that's not when the land exchange took place. The land exchange took place clearly after May 2002 because Elaine Martin was telling her employees to do it, to make this exchange happen in May of 2002. That's in the emails. So whenever it happened, wholly aside from an issue with the deeds, what she put on her application was false. She also, she omitted her second property on her application, as we pointed out in our brief. She omitted all kinds of assets, personal assets, vehicles, jewelry. The government proved all these things at trial. Counsel, going back to my earlier question, I don't have any problem agreeing, accepting that the SBA could have looked at those maneuvers and decided that disqualified her from the program. Can you explain to me concisely why it constituted criminal conduct? Because it was a lie that was material. And that goes to the defendant's notice argument. The crime the defendant was convicted of committing was wire fraud and mail fraud and false statements to the SBA. There was no lack of notice that 18 U.S.C. 1341 and 1343 were on the books. To answer the question, getting back to the question, am I right that there isn't a, that I looked? I mean, I can't see a year, any particular year where there's a showing of her, at least in what we have here on appeal, where there's a showing about her net worth on any particular year, vis-a-vis the $750,000 threshold, is that right? I don't think there is vis-a-vis the $750,000 threshold. I think there is vis-a-vis the $250,000 threshold when she initially got into the SBA program, at least with respect to her second home on the Donnelly property, which was worth, which would have put her well over the $250,000 threshold. I think, though, that's the wrong test. My colleague was saying that there's no evidence that she would have been ineligible for the program. That's, let's just assume for the sake of argument that that's true. You're not allowed to lie to a government agency to get into a program and then say when you're caught, oh, actually, I would have gotten into the program anyway, even if I had told the truth, so my lies aren't material. That's not what materiality means under Gowdin, under the Supreme Court's case law, and frankly, under common sense. You don't get a pass on lying to a government agency because ultimately, you may have some argument that would have let you win, and we don't think that's the case here, but that's not legally relevant anyway. The test for materiality is whether it's a fact that would have, what was important to the agency, as the Supreme Court said in Gowdin, that would have tended to influence the agency's decision making, and that's the crime here. So now you're getting around to answering my question. His point is she wasn't on notice, and your position is that this was a crime because she, in your words, lied, and because the lies were material, and the reason you say they're material, you've just reached, which is that your experts say so, but his point is his client wasn't on notice of what your experts thought. What's your answer to that? I think that's the wrong inquiry, so I want to push back on the premise, and it's also, the minor premise is wrong. That's not true. This, in the SBA case, she applied to the program three times, and she, as Ms. Nietzsche  Counsel, could you answer my question, please? As I understand your question, and I apologize if I don't, I think, as I understand your question, it's, was she on notice that these lies were material to the agency? No, my question is, his position is that she wasn't, and what's your answer to that? I heard you say that your answer is these lies are material because your experts say so. Yes, Your Honor. No, it's just that it's not a trick question. Your answer is these lies were material because your experts say so, and his response is going to be, it was earlier. How does she know that? How is she on notice? As a factual matter, she was on notice because she spoke with the program officer for the SBA twice previously. As a legal matter, I think that . . . Okay, could you give me those citations to the record? With Janice Nietzsche's testimony, Your Honor? Yep. That would be really helpful to me. I have it accounted for. Thank you. And I was going to go ahead and say that as a legal . . . well, let me find the cites first. Thank you. Janice Nietzsche's testimony starts at page 3990 of the transcript. She was the SBA official who actually interacted with the defendant, who was the precipient witness in this case. So she testified as to materiality, but also as to her interactions with the defendant and the timeline of defendant's application to the program. The witnesses that the defense complains about in her brief are Robert Watkins, who is not a lawyer but worked for the SBA program, and Joanne Robinson, who is the Department of Transportation lawyer. Putting aside the facts, putting aside the fact that the defense minor premise here is wrong, that's not what happened, as a legal matter, it's the wrong inquiry. Because the crime . . . at no point did anyone suggest, in the record, no witness, nor the government at closing, and I invite the court to look at the cites the defendant includes in her opening brief and reply brief to the record, no one said it's a crime to go against the intent of the SBA program or the Department of Transportation program. What the witnesses said was, is, we looked first to see whether you're eligible based on your net assets and your income. And second, we looked to see, in a discretionary, totality of the circumstances fashion, whether you're actually disadvantaged, whether this is . . . you're the type of person that has limited access to capital and credit who needs the help of this program. And so we needed to prove that the questions that were asked on the application, the things that the defense . . . that the lies defendant told were, in fact, material. If the experts had come in and said, oh yeah, we asked for all the stuff on the application, your birthday, I think, was my colleague's example, and, you know, all your asset transfers in the last two years. If they had . . . if the witnesses had said, yeah, we asked for that on the application, but we don't really care, it doesn't influence our decision making any, we just asked for that for the record, then we would not have been able to prove that these false statements were material. So those are the two elements, and they're separate elements. One is false statements, and the second is that they tended to affect the agency's decision making. And that's why it was necessary to bring these witnesses in to testify, to explain to the jury, which is our burden to do under Gowdin, it's an issue of fact, to explain why these false statements were material. Shifting gears here, because there's very limited time, what about the issue of the sentence and the use of the fraud guidelines and tables to sentence this person to seven years, in addition to the $3 million forfeiture, you know, a tiny sum of money she had to relinquish? Do you have any position in respect to that? The district courts, the sentence should have been based on the total amount of gross revenues that the defendant's company received, that it would not have received but for her fraud, which would have been $14 million. Where do you have a place for that under the law? From the language of the guidelines and the government benefits rules specifically, and the three circuits that have addressed this issue. Do you think that applies here? That does not seem to be a government benefit that we're talking about here. Your Honor, it is. When the government has a program for disadvantaged individuals or businesses, and the whole point of the program is to help people who need it, who would not be able to get business or toehold in the market otherwise, and someone takes that program and uses it not to get a toehold in the market, but to actually keep real disadvantaged businesses out? So you are exclusively on the application of the government benefits rule to support the seven-year sentence? No, I do not, Your Honor. The correct legal answer in this case is the government benefits rule applies, and the loss amount is $14 million. What the district court did, and this is a point of disagreement with my colleague, he's simply, with respect, wrong when he says the district court applied the rule that we asked for. The district court applied gain, sentenced her based on $3 million, and that part of the record that he cites, too, in SCR 139 and 140, what the district court said at sentencing was, I agree there's a loss here. However, unlike the 11th Circuit in Maxwell, I don't agree that the loss is the full amount of the contracts. So I'm going to sentence her based on her gain. The district court, and this is, I think, what's causing the confusion, the district court says 139 and 140 in the supplemental excepts record. If I'm wrong about that, in other words, if the 11th Circuit in Maxwell is right, and I'm wrong to be using the benefits rule, sorry, to be using gain, then I would depart downward anyway to get to the same place. So what we have here is . . . Where is there any loss? The loss is every . . . First, there's two types of loss. Both are pecuniary. I see my time has expired, if I may finish answering Judge Block's question. Definitely should answer his question. The first type of loss is that the government of the United States paid out, directly and indirectly, through the state programs, $14 million, where each of those dollars that went to defendant's business never should have gone to her, and in fact should have gone to somebody else who actually was entitled to the help. So could you stop right there, because that's why we're having trouble with this, I believe, if I'm understanding Judge Block's question. The government received, as I understand it, performance on these contracts, and there wasn't a dispute about the guardrails being put in, you know, properly or . . . No issue there. So as to that, did you have a number from you about how much that was worth? The gross revenue from the contracts is $14 million. Well, that's . . . that's the problem. So there's a number that went into the materials and the equipment and the labor, and then there's a number of her . . . that was her profit, if you will. Profits. Profits. The business profits were $4 million. Her profits, based on her share of the business, was $3 million. So the relevant numbers here are $14, gross revenue, $3 million, personal profits. Okay. So that's helpful to me. So as to the $14 million, why is that a loss to the government? Your argument that you were giving a minute ago about the dollars not going to a truly disadvantaged business individual seems to speak to the $3 million. I'll grant you that, but what about the $14 million? I would . . . I mean, I would cite this Court to the other courts of appeals to have addressed the issue, and their reasoning is that this type of program is an entitlement program. And that also gets to the difference between the 2F guideline and the 2B. They added the parenthetical. We don't dispute that that parenthetical was added in 2001, but this is an entitlement payment. It's something that defendant was entitled to by being part of a program for special disadvantaged businesses who needed the help. And every dollar that went into her business as a result of her fraudulent participation in the program was a dollar the U.S. government lost to fraud because it wasn't supposed to go to her in the first place. Any more than if someone fraudulently applied for food stamps and wasn't eligible for them, that dollar of food stamps shouldn't have gone to that person in the first place. That's a part of it. The government lost out on something they should not have paid. But here, the government paid for the value of the services, there's no loss. The government didn't just want . . . You may want to argue that there's an exception under the guidelines here, but I don't see any loss at all here. The government didn't just lose out on the services. The government . . . there are 2 parts to this program. The government wanted guardrail, and the government wanted guardrail from a qualified disadvantaged business. The government lost out on its aim to help disadvantaged, truly disadvantaged people. That's exactly right. As did the disadvantaged businesses themselves, and I understand that . . . That may be correct. I think that the government really lost out on the opportunity to give this to a disadvantaged person. I don't think there's any question about that. But it did not lose any money, and I'm just trying to understand how you apply the fraud tables. It's kind of complex. It's sort of like not so easy to work out, but, you know, I'm really . . . I don't see it here. This may be a good case for an upward variance, but I don't see any loss here, and I don't see where any of these government benefit rules apply here, or the regulatory rule applies to these circumstances. I just don't get it. Well, respectfully, Judge Block, if you do disagree with the other courts of appeals to rule on this issue, we would respectfully submit that you should still affirm the District Court's judgment, because the government's lost . . . Whatever the loss was, if it wasn't the full value of the contracts, because there was a component, admittedly, where the government is getting services in return, the government lost the part of that contract. In other words, the government is paying more than it would otherwise by having a special set-aside program or a program with goals to help disadvantaged businesses. And the businesses who are actually disadvantaged are being kept out of the market, as the District Court, and use this program to obtain a near-monopoly status in her part of the market. Those are both financial harms. And once that's acknowledged, that there is real financial harm, but it's hard to calculate, then what the District Court did was still correct. It's a real disagreement. I don't see any financial harm. You know, I think this is a perfect case for an upward variance. But anyway, we have to wade through all of these loss provisions under the Complex Fraud Guidelines, which I have to wrestle with all the time back home, but I just wanted to get your position on this. So at least I have a sense of what... If I could summarize it very briefly, defendant was not convicted of violating the spirit of law. She was convicted of lying about things that were material. And her sentence was based on the financial harm she caused the government, and properly, at least, on the gain, the financial gain that she received, to the extent that harm is real but hard to measure, and she was properly convicted and sentenced, and the judgment below should be affirmed. Thank you. Thank you. Mr. McBride, we said we'd give you three minutes. Thank you, Your Honor. I appreciate it. Let the government go over. So if you need a little more, why don't you tell me now how much time you need? Four might be nice. He went over about four. We'll give you four. Four and a half. Thank you very much, Your Honor. Four minutes. I wanted to start with the sentencing point. And I do appreciate your writing on the guidelines, by the way, on many cases. But I think Judge Gould hit the nail right on the head. There is a non-economic harm here that the government was arguably deprived of what it wanted to accomplish. But they never tried to put a value on that. They never said, okay, we're going to put a pecuniary value on that. My submission is you can't put a pecuniary value on it. Judge Block, who deals with these guidelines every day, is right. It may be an upward departure for a form of non-pecuniary, non-economic harm, but the loss here is zero. They got everything they paid for. And under the procurement rule, if they had had to re-bid it, or if they had to redo my client's work, that would have been loss. Counsel, the opposing counsel just suggested, forgive my interruption, he just suggested that they not only paid what they were going to pay, but because of this program they paid more than they otherwise would have paid. Was there evidence of that? None. None. This is the lowest bidder gets the contracts, at least on the DOT side. On the SBA side, on the 8A side, there are only three contracts involved there of the total. And those are 8A bidders only. But there's no evidence that the government paid any more for these particular contracts. The government made no attempt. And let me just say, as to the sentencing, I'm not wrong. I'm right. I was there. And Mr. Robbins was not. But, you know, at ER 17 and continuing at the sentencing, Judge Windmill is absolutely clear he's making a choice between two rules. He doesn't, he rejects the benefit rule because he says the loss can be ascertained. And he says the loss, I'm going to decide, Judge Windmill, that the loss is the full amount of the contracts, the full $14 million. And he says, I'm going to find as a matter of law, on ER 18, I'm going to find as a matter of law that it is the applicable comment to rely upon in determining the loss amount under the fraud charges. The Ninth Circuit has not yet ruled on this issue. And although they have in Galliano and Shaw suggested strongly that the analysis of Judge Posner in the Snyder case should be applied in loan fraud cases, this is not a loan fraud case. And although that argument, I think, may well hold sway in the Ninth Circuit on that issue, I don't think it applies here. He knew he was going out on a limb. That's ER 18 when he chose the government benefits rule. So and as was pointed out, we get no credit for the work done. That's absurd. We're treated, and Judge Posner said this in Snyder, Snyder's a good read. You know, he said, look, you know, you can't treat, there are two kinds of fraud here. There's the fraud meister who intends to do nothing, the con artist who says, just wants the contractual money. And then there's someone who actually performs, but maybe was chosen for the wrong reason. Under the government's analysis, both are punished in the same manner, but obviously the conduct is very different. Going to your point, Judge Block, my client's sentence was almost three times the average fraud sentence in the Ninth Circuit, which is 25 months. So this was an enormous sentence and a tremendous injustice to a 67-year-old woman, in my opinion. As to Judge Christian's earlier question about reversal because of the propensity argument, the cases are at page 44 of our opening brief, and they are United States v. Miller and United States v. Brooke. And in both those cases where the evidence was used for propensity, in fact, all counts were reversed because you simply can't, where the government is saying this person's a criminal because of this past act, you can't separate that. And I cited Sartre, the stranger, but it is true, the guy, you know, the French throw in everything, and that's not our system of law. Finally, I wanted to quote the prosecutor in her closing argument because what I didn't hear from the United States at the podium is that it is unlawful, the land swap was unlawful. You didn't hear that because it wasn't unlawful. And you didn't hear that you had to report every transaction within two years because the rule is limited to transactions where it's with a family member and for less than market value. You didn't hear that. And Janet Knighties, who testified at court, can't change the rules. She can't give my client notice of illegality. It's the CFR that gives notice. But let me quote the prosecutor. She says, and I quote, before the land swap, Elaine Martin did not qualify, just looking at these assets. She was over the net worth requirement. And so she needed to get under the net worth requirement. So she did what she was not supposed to do, as Mr. Watkins and Ms. Knighties told you, and she swapped. That's wrong. That was legal, what my client did, and the government made it illegal. One more, if I could, on the reporting requirement. You're quite over the extra four minutes we gave you. See the red light? 51, yes. Do you want me to stop? I wanted to read this, give you the cite. The cite on what I just read is ER 153. And I would also point you to ER 172. My client was convicted of fictitious crimes of which she never had notice. That requires reversal. And my client's conduct from 16 years ago that resulted in a civil settlement was not relevant in this case and was used for propensity. That requires reversal of all counts. Thank you, Your Honors. Thank you, Mr. McBride. Let me say, I wish we could listen to counsel on both sides for the whole day. It's an excellent argument, both from Mr. McBride and from Mr. Robbins. As you'd probably not be surprised to hear, this isn't the only important criminal conviction that our panel has to address in the Ninth Circuit. So I just block-stepped out for a minute, but I don't think he'll mind my saying we will conclude this with thanks for your travels and your argument. And the case U.S. v. Martin shall be submitted, and you'll hear from us in due course. Thank you, Your Honor. Okay.
judges: Block, Gould, Christen